**Docket No. 2026-1854**

*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

BLUE SKY THE COLOR OF IMAGINATION, LLC,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

*Appeal from the United States Court of International Trade*
*Case No. 1:21-cv 00624-JAR · Senior Judge Jane A. Restani*

## APPELLANT'S REPLY BRIEF

CHRISTOPHER J. DUNCAN, ESQ.
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
(213) 624-2500 Telephone
chris.duncan@squirepb.com

ELON A. POLLACK, ESQ.
STEIN SHOSTAK SHOSTAK POLLACK & O'HARA, LLP
445 South Figueroa, Suite 2388
Los Angeles, CA 90071
(213) 630-8890 Telephone
elon@steinshostak.com

*Attorneys for Appellant, Blue Sky the Color of Imagination, LLC*

# TABLE OF CONTENTS

**Page**

I. The Government Concedes the CIT Found the Planners are Partly Classifiable in Heading 4910 .......... 2

II. The Government Concedes the CIT Used the Superseded "More Than" Doctrine. .......... 2

III. The Government Concedes GRI 3 Must Be Used to Classify Articles Classifiable *in Whole* in Two Headings. .......... 4

IV. The Government Wrongly Disputes that GRI 3 is Used to Decide the Classification of Articles Classifiable *in Part* in Two Headings. .......... 6

V. Conclusion. .......... 12

CERTIFICATE OF COMPLIANCE

ADDENDUM PURSUANT TO FEDERAL CIRCUIT RULE 28

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bauer Nike Hockey USA, Inc. v. United States*,
393 F.3d 1246 (Fed.Cir.2004) ....................5

*CamelBak Prods., LLC v. United States*,
649 F.3d 1361 (Fed.Cir.2011) ....................3, 6, 7

*CardSoft v. Verifone, Inc.*,
769 F.3d 1114 (Fed. Cir. 2014) ....................5, 11

*Carl Zeiss, Inc. v. United States*,
195 F.3d 1375 (Fed. Cir. 1999) ....................2

*Home Depot USA, Inc. v. United States*,
30 C.I.T. 445 F. Supp.2d 1278 (2006)....................6

*Home Depot USA, Inc. v. United States*,
491 F.3d 1334 (Fed. Cir. 2007) ....................6

*La Crosse Tech., Ltd. v. United States*,
723 F.3d 1353 (Fed. Cir. 2013) ....................3, 4, 6, 10

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed.Cir.1998) ....................10

*Rodriguez v. Dep't of Veterans Affs.*,
8 F.4th 1290 (Fed. Cir. 2021) ....................5, 11

**Other Authorities**

Fed.R.App.P. 34(a)(2)(C) ....................14

The government concedes: (1) the CIT found the yearly and monthly calendar parts of Blue Sky's calendar year 2021 planners are classifiable as calendars in heading 4910; (2) the CIT used the superseded "more than" doctrine to find the planners' weekly calendar parts are not classifiable in heading 4910; and (3) GRI 3 must be used to decide the planners' classification if they are classifiable *in whole* in two headings. These three concessions are fatal to the government's defense because, given the planners are at least *prima facie* classifiable *in part* as calendars, they are either: (1) classified in heading 4910 using GRI 1 if they are *prima facie* classifiable *in whole* only in heading 4910, as Blue Sky argues; or (2) classified in heading 4910 using GRI 3 if they are *prima facie* classifiable *in whole* in both headings 4910 and 4820, as the CIT found.

The government's sole dispute with Blue Sky is its contention that the CIT was permitted to use GRI 1 to classify the planners if they are classifiable *in part* in headings 4910 and 4820, as the government now argues. This claim is directly contrary to the GRIs and this Court's binding precedent, which specifically require that such composite articles be classified exclusively using GRI 3. Accordingly, even if this Court finds the planners are classifiable *in part* in two different headings, as the government argues, Blue Sky prevails.

## I. The Government Concedes the CIT Found the Planners are Partly Classifiable in Heading 4910.

The government concedes the CIT found that pages in the planners depicting printed yearly and monthly calendars are "charts for referencing certain dates" that "meet the calendar definition." Gov. Br. at 10-11, 25. By affirming that these parts of the planners are calendars, the government concedes the planners are *prima facie* classifiable at least *in part* (the yearly and monthly calendar parts) in heading 4910. *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1380 (Fed. Cir. 1999) (holding that if an article meets the definition of a microscope it is classifiable in the *eo nomine* heading covering "microscopes."). As explained below, this concession should end the case because it means the planners are either: (1) classified solely in heading 4910 using GRI 1 if the planners do not contain other parts *prima facie* classifiable in heading 4820; or (2) if the planners contain other parts *prima facie* classifiable in heading 4820, classified using GRI 3, not GRI 1.

## II. The Government Concedes the CIT Used the Superseded "More Than" Doctrine.

The government concedes the CIT found the planners are not classifiable in heading 4910 because their weekly calendar pages, which comprise much of the planners, and which are otherwise *prima facie* classifiable as calendars because they are "charts for referencing certain dates" that "meet the calendar definition," are not classified as calendars solely because they have notetaking space that "exceeds" (*i.e.*,

is *more than*) the "scant" notetaking space, and a notetaking use that "exceeds"(*i.e.*, is *more than*) the "incidental" notetaking purpose, the CIT subjectively believes is allowed for calendars. Gov. Br. 24; APPX0031. The government acknowledges CIT used this prohibited "more than" standard but argues this Court should ignore the CIT's error because that the CIT concurrently used GRI 1 to come to the same conclusion. Gov. Br. 24. As set forth below, this flawed rationale directly conflicts with this Court's binding precedent that GRI 3, not the "more than" doctrine, must be used to classify articles that have features that exceed those named in a HTSUS *eo nomine* heading.

"With regard to assessing an imported article pursuant to GRI 1, we consider a HTSUS heading or subheading an *eo nomine* provision when it describes an article by a specific name." *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed.Cir.2011). "Absent limitation or contrary legislative intent, an *eo nomine* provision '**include[s] all forms of the named article**[,]' even improved forms." *Id.* at 1364–65 (citation omitted and emphasis added). However, "[w]hen goods are in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, then the goods cannot be classified under an *eo nomine* provision pursuant to GRI 1." *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358

(Fed. Cir. 2013) (citation and internal quotation marks omitted). In such situations, "we apply GRI 3 to resolve the classification." *See id*.

Pursuant to this binding precedent, either: (1) the weekly calendars' writing space is insignificant such that the planners are classifiable as a form of calendar in heading 4910 under GRI 1; or (2) the weekly calendars' notetaking space is so significant that the planners cannot be classified using GRI 1, and GRI 3 must be used to resolve the classification between heading 4910 and heading 4820. Either way, after finding the planners have parts classifiable as calendars, the CIT was precluded from using the "more than" doctrine to disqualify heading 4910 so it could classify them in heading 4820 using GRI 1. Instead, pursuant to this Court's binding precedent, the CIT was required to either: (1) use GRI 1 to classify the planners completely in heading 4910 if their notetaking space is insignificant; or (2) use GRI 3 to classify them in either heading 4910 or 4820 if their notetaking space is so significant it implicates heading 4820 as well. Given this Court's binding precedent prohibits the CIT from classifying the planners in heading 4820 using GRI 1, rather than being trivial, the CIT's improper use of the invalidated "more than" doctrine to allow it to do so was reversible error.

## III. The Government Concedes GRI 3 Must Be Used to Classify Articles Classifiable *in Whole* in Two Headings.

Finally, the government concedes that GRI 3 must be used to decide the planners' classification if they are classifiable *in whole* in two different headings.

Gov. Br. 26. Thus, if the planners are classifiable *in whole* in both headings 4910 and 4820, as the CIT found before improperly eliminating heading 4910 from consideration using the "more than" doctrine, then it is undisputed the Court must use GRI 3 to decide classification. Using the CIT's own factual findings that the yearly, monthly, and weekly calendars each *prima facie* meet the definition of heading 4910 calendars because they are each "charts for referencing certain dates" that "meet the calendar definition," assuming *arguendo* the CIT's parallel classification of the planners *in whole* in heading 4820, and relying on this Court's decision in *Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246 (Fed.Cir.2004), Blue Sky argues the planners are classified in heading 4910 using GRI 3(a) because they are then classifiable *in whole* in two headings and heading 4910 is the more specific heading. Given the government did not analyze classification using GRI 3, or even cite to *Bauer,* much less distinguish it, it has waived any potential defense to Blue Sky's argument that, if the planners are classifiable *in whole* in two different headings, under *Bauer*, which is directly on point, they are classified in heading 4910 based on the rule of specificity in GRI 3(a). *See Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1305 (Fed. Cir. 2021) (an issue that is not developed as an argument in a party's brief is deemed waived); *CardSoft v. Verifone, Inc.*, 769 F.3d 1114, 1119 (Fed. Cir. 2014) (when a party does

not respond to an argument in its responsive brief on appeal, such arguments are deemed waived).

## IV. The Government Wrongly Disputes that GRI 3 is Used to Decide the Classification of Articles Classifiable *in Part* in Two Headings.

Only one issue remains: The government's contention that GRI 3 does not apply to the planners if they are classifiable *in part* in different headings. Gov. Br. 26 n. 1. With composite articles, such as backpacks containing water bottles (*CamelBak*) or clocks with barometers (*La Crosse*), or, more to the point, memorandum pads incorporating calendars (Heading 4910 Explanatory Notes) or notebooks combined with calendars (CIT's description of Blue Sky's planners), each of which have parts *prima facie* classifiable in different headings, the government argues without support that GRI 1, not GRI 3, may be used to decide classification. Gov. Br. 26. The government is wrong. This Court has consistently held that the classification of an article with parts *prima facie* classifiable in different headings is decided exclusively using GRI 3. *See, e.g., CamelBak, supra,* 649 F.3d 1361 (backpack with water container); *La Crosse, supra,* 723 F.3d 1353 (clock with barometer); *Home Depot USA, Inc. v. United States*, 30 C.I.T. 445 F. Supp.2d 1278 (2006) *aff'd*. 491 F.3d 1334 (Fed. Cir. 2007) (light fixture with metal and plastic parts). In *CamelBak* this Court explained why GRI 3 applies in these situations:

> Each component of the subject articles is classifiable under a separate subheading of 4202.92 HTSUS—the cargo component is classifiable as a "travel, sports, or similar bag[ ]" under 4202.92.30 HTSUS, and the hydration component is classifiable as an "insulated food and beverage bag" under 4202.92.04 (or 4202.92.08) HTSUS. Accordingly, **GRI 3(b) controls the classification of the subject articles.**

*CamelBak, supra,* 649 F.3d at 1369 (emphasis added). The same is true and GRI 3(b) controls if, as the government repeatedly argues, the planners are comprised jointly of separate component "calendar pages" classifiable in heading 4910 and component "lined pages" classifiable in heading 4820. Gov. Br. 13, 21, and 33.

To be clear, Blue Sky maintains that the planners are classifiable in heading 4910 using GRI 1 because nearly every page, including the weekly calendars, contains a kind of heading 4910 calendar with a few lines to write notes for each day in calendar year 2021, not a generic, undated heading 4820 notebook, lined writing page, or "other." Blue Sky's position is buttressed by Customs' recent ruling that a paper product comprised completely of dated weekly calendars with even more notetaking in than Blue Sky's weekly calendars, and no yearly or monthly calendars, is still classified as a calendar in heading 4910 using GRI 1. APPX0044, 1643-44, AAPX1646. In addition, in a recent May 19, 2026, public online presentation to importers providing guidance on classification in Chapter 49 delivered by Customs Import Specialist Laurel Duvall, Customs used as a pictured example of a heading 4910 calendar a printed daily calendar with a full page of lined notetaking space for each day of the year. *See* Classification in Chapter 49, Printed Matter Webinar -

Form. As shown in images from the presentation below, the amount of notetaking space (20+ lines) for the single day of Tuesday, May 8, 2018, in this daily calendar product Customs instructs importers to classify as a heading 4910 calendar far exceeds the lesser amount of notetaking space (8 to 11 lines) in Blue Sky's planners' weekly calendars for Saturday, May 8, 2021.






The CIT's refusal to afford any deference to Customs' published official positions that weekly and daily calendars with more notetaking space than Blue Sky's planners are still classified in heading 4910 further undercuts its erroneous decision. APPX0044.

Nevertheless, even if the government is correct that Blue Sky's planners have pages classified in different headings based on what kind of printed calendar they depict and how much notetaking space there is, regardless of whether the planners are classifiable *in whole* in headings 4910 and 4820, as the CIT found, or classifiable *in part* in headings 4910 and 4820, as the government argues, GRI 3, not GRI 1, must be used to resolve the planners' classification. *See La Crosse, supra,* at 723 F.3d at 1358. Thus, the government's quibble with Blue Sky's citation to *Orlando Food Corp. v. United States*, 140 F.3d 1437 (Fed.Cir.1998), which involved the classification of tomatoes in sauce, is misplaced. *See* Gov. Br. 26 n. 1. Whether tomatoes and sauce are classifiable *in whole* in two different headings, or *in part* in two different headings, this Court's precedent requires that GRI 3, which the CIT did not analyze and the government waived by omission, must be used to decide classification.

Again, outside of this case, in which it has incorrectly assessed an additional nearly $25 million against Blue Sky, Customs readily agrees with Blue Sky that GRI 3 must be used here under either scenario, as demonstrated in two recent binding rulings involving similar paper products classifiable *in part* in Chapters 48 and/or 49 headings. In N317533 (March 2, 2021), Customs used GRI 3(a), not GRI 1, to classify paper rolls with printing *prima facie* classifiable *in whole* in both heading 4911.91.2020 and heading 4811.41.2100. In N283008 (February 16, 2017), Customs

used GRI 3(b), not GRI 1, to classify a paper bag with tissue *prima facie* classifiable *in part* in different Chapter 48 headings. Thus, according to Customs, if a paper product is *prima facie* classifiable in two different headings, as the government concedes the CIT found is the case with Blue Sky's planners, then GRI 3 must be used to decide classification. Given the government argued only for classification using GRI 1 to the direct exclusion of GRI 3, it is barred from arguing for classification in heading 4820 using GRI 3. *Rodriguez, supra,* 8 F.4th at 1305; *CardSoft*, *supra*, 769 F.3d at 1119.

Even if this Court were to consider classification in heading 4820 using GRI 3, however, it would decide in favor of Blue Sky. The CIT explicitly rejected GRI 3 and did not conduct any GRI 3(a) specificity or GRI 3(b) essential character analyses, and the government waived this issue, so this Court may draw its own conclusions relying solely on Blue Sky's arguments. Heading 4910 is indisputably more specific than heading 4820, so, if the planners are classifiable *in whole* in both headings, as the CIT found, GRI 3(a) requires classification in heading 4910. Further, even if the planners' yearly and monthly calendar pages are classifiable in heading 4910 and its weekly calendar pages are classifiable in heading 4820, as the government argues, GRI 3(b) requires classification in heading 4910. Given the planners' prevalent calendar price-point, features, and marketing, printed calendars, not blank notetaking space, are the planners' essential, indispensable features.

APPX1643-44, APPX1646. Just as with the calendar application on one's mobile device or computer, navigating to the date in a calendar in which plans will occur is a precursor to writing notes as reminders of such plans. APPX1643-44. If the writing space is removed, the planners will still be useful calendaring devices worthy of their high price-point. APPX1696-97. If the calendar printing is removed, however, the planners would simply be cheap, generic blank notebooks. APPX1696-97. Further, unlike such notebooks, because the planners are comprised entirely of calendar year 2021 calendars, they are now expired and obsolete, highlighting the elevated importance of their informational materials calendar printing over their relatively inconsequential notetaking space. APPX1695. Thus, the GRI 3(b) also requires classification in heading 4910 because the planners' essential character is manifestly imparted by their advertised printed calendars on nearly page. If neither GRI 3(a) nor 3(b) apply, GRI 3(c) likewise requires classification in heading 4910 because it comes last in sequence in the HTSUS.

**V. Conclusion.**

In sum, under any scenario, the planners are classified in heading 4910. The planners are partly calendars, so they cannot be classified in heading 4820 under GRI 1. If the planners are calendars only, they are classified in heading 4910 under GRI 1. If the planners are both calendars and notebooks, they are classified in heading 4910 under GRI 3(a). If the planners are part calendars and part notebooks,

they are classified in heading 4910 under GRI 3(b). If the planners are part calendars and part notebooks, and neither part imparts the planners' essential character, they are classified in heading 4910 under GRI 3(c).

Accordingly, this Court has only four classification options to correct the CIT's reversible error:

1. Find the planners are *prima facie* classifiable completely in heading 4910 and use GRI 1 to conclude the planners are classified in heading 4910; or

2. Find the planners are *prima facie* classifiable *in whole* in both headings 4910 and 4820 and use GRI 3(a) to conclude the planners are classified in heading 4910 because it is more specific; or

3. Find the planners are *prima facie* classifiable *in part* in heading 4910, and *prima facie* classifiable *in part* in heading 4820, and use GRI 3(b) to conclude the planners are classified in heading 4910 because calendars impart the planners' essential character; or

4. Find the planners are *prima facie* classifiable *in part* in heading 4910, and *prima facie* classifiable *in part* in heading 4820, find that none of these parts provides the planners' essential character, and use GRI 3(c) to conclude the planners are classified in heading 4910 because heading 4910 comes last in the HTSUS.

Under these circumstances, as a matter of law, each of this Court's available options on appeal results in a decision in favor of Blue Sky. Therefore, the Court's decisional process would not be significantly aided by oral argument. Pursuant to Federal Rule of Appellate Procedure 34(a)(2)(C), Blue Sky hereby requests that the panel consider issuing a decision on the papers in favor of Blue Sky.

Dated August 14, 2026, Los Angeles, California.

By: /s/ *Christopher J. Duncan*
Christopher J. Duncan
**SQUIRE PATTON BOGGS (US) LLP**
555 South Flower St., 31st Floor
Los Angeles, CA 90071
Phone: (213) 689-5132
chris.duncan@squirepb.com

/s/ *Elon A. Pollack*
Elon A. Pollack
**STEIN SHOSTAK SHOSTAK POLLACK & O'HARA LLP**
445 South Figueroa St., Ste. 2388
Los Angeles, CA 90071
Phone: (213) 630-8888
elon@steinshostak.com

*Attorneys for Appellant, Blue Sky the Color of Imagination, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2026-1854

**Short Case Caption:** Blue Sky the Color of Imagination, LLC v. United States

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 2,866 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 08/14/2026

Signature: /s/ Christopher J. Duncan

Name: Christopher J. Duncan

# ADDENDUM
# Pursuant to Federal Circuit Rule 28

# TABLE OF CONTENTS TO ADDENDUM

**Description** **Page(s)**

Customs Binding Letter Ruling to
EMO Trans re: The tariff classification of
a paper gift bag with "instant tissue" from China,
dated February 16, 2017 .......... ADD-0001

Customs Binding Letter Ruling to
Michaels Stores re: The tariff classification of
self-adhesive printed paper in rolls from China,
dated March 22, 2021 .......... ADD-0003

Customs Binding Letter Ruling to
Vista Stationary & Print Ltd. re: The tariff
classification calendars from China,
dated July 2, 2025 .......... ADD-0006

N283008

February 16, 2017

CLA-2-48:OT:RR:NC:3:230

CATEGORY: Classification

TARIFF NO.: 4819.40.0040

Ms. Dianna Garren
EMO Trans
20 Southwoods Pkwy
Suite 500
Atlanta, GA 30354

RE: The tariff classification of a paper gift bag with "instant tissue" from China

Dear Ms. Garren:

In your letter, dated January 26, 2017, you requested a classification ruling on behalf of your client, International Greeting. The ruling was requested for a paper gift bag with "instant tissue". A product specification sheet was submitted for our review.

The article, identified as "Cahootz Cub Bag", is a paper gift bag measuring approximately 9" wide by 10" high by 5" deep. The gift bag is outfitted with "instant tissue". Two sheets of tissue paper are accordion-pleated, cut to shape, and permanently affixed to the inside of the the gift bag. When unfolded, the tissue paper fans out and gives the appearance of a gift bag stuffed or fully lined with tissue paper. The bag prevents the need for purchases of both a gift bag and tissue paper separately. The bag has two polypropylene cord handles.

In your submission, you suggest that the gift bags are classified as gift bags without classifying the tissue paper separately. We agree with this suggestion. The classification of merchandise under the Harmonized Tariff Schedule of the United States (HTSUS) is governed by the General Rules of Interpretation (GRIs), taken in order. GRI 1 requires that classification be determined according to the terms of the headings and any relative section or chapter notes. In the event that goods cannot be classified solely on the basis of GRI 1, and if the heading and legal notes do not otherwise require the remaining GRIs will be applied, in the order of their appearance. In the instant case, neither GRIs 1 or 2 are applicable; classification under GRI 3 is considered.

The gift bag is constructed of multiple materials, i.e., the paper bag and tissue, that are prima facie classifiable in different headings. The bag therefore is a composite good within the meaning of GRI 3(b). GRI 3(b) states, in pertinent part:

> Mixtures, composite goods consisting of different materials or made up of different components and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

In accordance with the Explanatory Notes (ENs) for GRI 3(b), the essential character of an item may be determined by the nature of the material or component, its bulk, quantity, weight, or value, or by the role of a constituent material in relation to the use of the goods. The gift bag is the functional part of the item, has the greatest weight, value, and bulk, and imparts the item with its consumer appeal. The tissue paper enhances the bag, but does not impart the essential character on its own. Therefore, we find that the bag imparts the essential character and controls the classification.

The applicable subheading for the gift bag with "instant tissue" will be 4819.40.0040, HTSUS, which provides for Cartons, boxes, cases, bags and other packing containers, of paper, paperboard, cellulose wadding or webs of cellulose fibers; box files, letter trays and similar articles, of paper or paperboard of a kind used in offices, shops or the like: Other sacks and bags, including cones: Other. The rate of duty will be free.

Duty rates are provided for your convenience and are subject to change. The text of the most recent HTSUS and the accompanying duty rates are provided on World Wide Web at https://hts.usitc.gov/current.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist Laurel Duvall at laurel.duvall@cbp.dhs.gov.

Sincerely,

Steven A. Mack
Director
National Commodity Specialist Division

N317533

March 2, 2021

CLA-2-48:OT:RR:NC:N1:130

CATEGORY: Classification

TARIFF NO.: 9903.88.03; 4811.41.2100

Mr. Brett Stewart
Michaels Stores Procurement Company
3939 West John Carpenter Freeway
Irving, TX 75063

RE: The tariff classification of self-adhesive printed paper in rolls from China

Dear Mr. Stewart:

In your letter, dated February 11, 2021, you requested a tariff classification ruling. The ruling was requested for SKU# 10512701, "lithographically printed paper self-adhesive washi tapes". Photos and product information were submitted for our review.

The documents and photos submitted indicate that SKU# 10512701 includes "washi tapes" of multiple designs and widths. All are made of lithographically-printed paper that is coated on one side with adhesive. Each is imported in roll form and none exceeds 15cm in width. The photos provided show that the washi tape is printed in multiple repeating patterns, such as graphic images and text phrases.

In your letter, you suggest that the lithographically-printed, self-adhesive washi tapes are classifiable in subheading 4911.91.2020, Harmonized Tariff Schedule of the United States (HTSUS), which provides for Pictures, designs and photographs: Printed not over 20 years at the time of importation: Other: Lithographs on paper or paperboard: Not over 0.51 mm in thickness: Posters. We believe that this tariff code was claimed in error and that you had intended to claim 4911.91.2040, HTSUS, which provides for items other than posters. Regardless, we disagree with classification in either provision.

The Explanatory Notes to the Harmonized System (ENs) for Chapter 49 state that "The term "printed"… **does not**, however, **include** coloration or decorative or repetitive-design printing." We believe that this language clearly precludes the washi tape – which is printed with coloration and decorative or repetitive-design printing – from classification in Chapter 49. Even without this note, however, we find that consideration under the General Rules of Interpretation (GRIs) also disqualifies classification in Chapter 49.

Classification is governed by the GRIs, taken in order. The washi paper may be considered within two headings, 4811 and 4911. Heading 4811 provides for Paper, paperboard, cellulose wadding and webs of cellulose fibers, coated, impregnated, covered, surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size, other than goods of the kind described in heading 4803, 4809 or 4810). Heading 4911 provides for Other printed matter, including printed pictures and photographs. When goods are, prima facie, classifiable in two different headings, GRI 3 is considered. Rule 3(a) instructs that "the heading which provides the most specific description shall be preferred to headings providing a more general description." The instant item is paper which has been coated on one side with adhesive, is surface-decorated or printed, and is in rolls. The washi tape is plainly described by the language of heading 4811. Heading 4911, on the other hand, provides only for "Other printed matter". This only vaguely describes the tape. Therefore, in accordance with GRI 3a, the washi tape is classified in heading 4811, as this heading provides the most specific description.

The applicable subheading for the lithographically printed, self-adhesive paper washi tape will be 4811.41.2100, HTSUS, which provides for Paper, paperboard, cellulose wadding and webs of cellulose fibers, coated, impregnated, covered, surface-colored, surface-decorated or printed, in rolls or rectangular (including square) sheets, of any size, other than goods of the kind described in heading 4803, 4809 or 4810: Gummed or adhesive paper and paperboard: Self-adhesive: Other: In strips or rolls. The rate of duty will be free.

Pursuant to U.S. Note 20 to Subchapter III, Chapter 99, HTSUS, products of China classified under subheading 4811.41.2100, HTSUS, unless specifically excluded, are subject to an additional 25 percent ad valorem rate of duty. At the time of importation, you must report the Chapter 99 subheading, i.e., 9903.88.03, in addition to subheading 4811.41.2100, HTSUS, listed above.

The HTSUS is subject to periodic amendment so you should exercise reasonable care in monitoring the status of goods covered by the Note cited above and the applicable Chapter 99 subheading. For background information regarding the trade remedy initiated pursuant to Section 301 of the Trade Act of 1974, you may refer to the relevant parts of the USTR and CBP websites, which are available at https://ustr.gov/issue-areas/enforcement/section-301-investigations/tariff-actions and https://www.cbp.gov/trade/remedies/301-certain-products-china, respectively.

Duty rates are provided for your convenience and are subject to change. The text of the most recent HTSUS and the accompanying duty rates are provided on World Wide Web at https://hts.usitc.gov/current.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist Laurel Duvall at laurel.duvall@cbp.dhs.gov.

Sincerely,

Steven A. Mack
Director
National Commodity Specialist Division

**U.S. Department of Homeland Security**
**U.S. Customs and Border Protection**
National Commodity Specialist Division
One World Trade Center, Suite 51.201
New York, NY 10007

**U.S. Customs and Border Protection**

N350537

July 2, 2025

CLA-2-49:OT:RR:NC:5:130

CATEGORY: Classification

TARIFF NO.: 4910.00.4000; 9903.01.22; 9903.01.31; 9903.01.32; 9903.88.15

Mr. Steven Plackett
Vista Stationery & Print Ltd.
Exe Box
Exeter, EX28FD
United Kingdom

RE: The tariff classification of calendars from China

Dear Mr. Plackett:

In your letter, dated June 24, 2025, you requested a tariff classification ruling for five calendars. Images and descriptions of the items were submitted for our review.

The items under consideration are calendars in five different styles, each printed on paper. The first is a wall calendar measuring 610mm long by 305mm wide when open. There is a picture on every other page and a month grid on the facing page. The second is a size A3 calendar measuring 420mm long by 297mm wide. The calendar is spiral bound and has a photo and month grid on each page. The third is a calendar block measuring 150mm long by 120mm wide, with tear-away pages for each day. The fourth is a “week to view” calendar. It measures 305mm wide by 305mm long, is spiral bound, and each page has a week shown. The fifth, a “Deluxe” calendar, measures 610mm long by 305mm wide when open, and has a picture on every other page and a month grid on the facing page. All of the calendars are printed by means of offset lithography. Each is over 0.51mm in thickness.

The applicable subheading for each of the calendars will be 4910.00.4000, Harmonized Tariff Schedule of the United States (HTSUS), which provides for Calendars of any kind, printed, including calendar blocks: Printed on paper or paperboard in whole or in part by a lithographic process: Over 0.51 mm in thickness. The rate of duty will be free.

Effective March 4, 2025, pursuant to U.S. Note 2(u) to Subchapter III, Chapter 99, all products of China and Hong Kong as provided by heading 9903.01.24, HTSUS, other than products classifiable under headings 9903.01.21, 9903.01.22, and 9903.01.23, HTSUS, will be subject to an additional 20 percent ad valorem rate of duty. Merchandise classifiable under subheading 4910.00.4000, HTSUS, constitutes “any information or informational materials” encompassed by 50 U.S.C. § 1702(b)(3). Accordingly, such merchandise is exempt from additional duties under Executive Order 14195 pursuant to heading 9903.01.22, HTSUS. At the time of

entry, you must report the applicable Chapter 99 heading, 9903.01.22, in addition to subheadings 4910.00.4000, HTSUS, listed above.

Effective April 5, 2025, Executive Orders implemented "Reciprocal Tariffs." All imported merchandise must be reported with either the Chapter 99 provision under which the reciprocal tariff applies or one of the Chapter 99 provisions covering exceptions to the reciprocal tariffs. Products from all other countries will be subject to an additional 10 percent ad valorem rate of duty. Your product falls within an excepted subheading. At the time of entry, you must report the Chapter 99 headings applicable to your product classification, 9903.01.31 and 9903.01.32, in addition to subheading 4910.00.4000, HTSUS, listed above.

Pursuant to U.S. Note 20 to Subchapter III, Chapter 99, HTSUS, products of China classified under subheading 4910.00.4000, HTSUS, unless specifically excluded, are subject to an additional 7.5 percent ad valorem rate of duty. At the time of importation, you must report the Chapter 99 subheading, 9903.88.15, in addition to subheading 4910.00.4000, HTSUS, listed above.

The HTSUS is subject to periodic amendment so you should exercise reasonable care in monitoring the status of goods covered by the Note cited above and the applicable Chapter 99 subheading. For background information regarding the trade remedy initiated pursuant to Section 301 of the Trade Act of 1974, you may refer to the relevant parts of the USTR and CBP websites, which are available at https://ustr.gov/issue-areas/enforcement/section-301-investigations/tariff-actions and https://www.cbp.gov/trade/remedies/301-certain-products-china, respectively.

The tariffs and additional duties cited above are current as of this ruling's issuance. Duty rates are provided for your convenience and are subject to change. The text of the most recent HTSUS and the accompanying duty rates are provided on the World Wide Web at https://hts.usitc.gov/current.

The holding set forth above applies only to the specific factual situation and merchandise description as identified in the ruling request. This position is clearly set forth in Title 19, Code of Federal Regulations (CFR), Section 177.9(b)(1). This section states that a ruling letter is issued on the assumption that all of the information furnished in the ruling letter, whether directly, by reference, or by implication, is accurate and complete in every material respect. In the event that the facts are modified in any way, or if the goods do not conform to these facts at time of importation, you should bring this to the attention of U.S. Customs and Border Protection (CBP) and submit a request for a new ruling in accordance with 19 CFR 177.2. Additionally, we note that the material facts described in the foregoing ruling may be subject to periodic verification by CBP.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 CFR 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported.

If you have any questions regarding the ruling, contact National Import Specialist Laurel Duvall at laurel.duvall@cbp.dhs.gov.

Sincerely,

(for)

James Forkan
Acting Director
National Commodity Specialist Division

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2026-1854

**Short Case Caption** Blue Sky the Color of Imagination, LLC v. United States

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 08/14/2026

by ☐ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☑ Other: CM/ECF

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Monica P. Triana, Esq. | UNITED STATES DEPARTMENT OF JUSTICE<br>International Trade Field Office<br>New York, New York 10278; monica.p.triana@usdoj.gov |
| | |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 08/14/2026

Signature: /s/ Christopher J. Duncan

Name: Christopher J. Duncan